IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria, Virginia

| | |
|---|---|
| Rankin Landscaping, Inc. ) | |
| ) | |
| and ) | |
| ) | |
| Andre Gutierrez ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-244-JCC-TRJ |
| ) | |
| Elaine L. Chao, ) | |
| Secretary of the United ) | |
| States Department of Labor ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

This action is an appeal of an administrative decision rendered by the Board of Alien Labor Certification Appeals (the "Board" or "BALCA") denying an application for alien labor certification. The Complaint alleges that BALCA wrongfully denied Rankin Landscaping, Inc.'s ("Rankin") and Andre Gutierrez's ("Gutierrez") (collectively referred to as "plaintiffs") application for permanent labor certification under 8 U.S.C. § 1182(a)(5)A) and 20 C.F.R. § 656, *et seq*. The case is before the court on cross motions for summary judgment.

**JURISDICTION**

This court has jurisdiction over this action pursuant to the Administrative Procedures Act, 5 U.S.C. § 704. Venue is proper pursuant to 28 U.S.C. § 1391(e)(3) because plaintiffs reside in this judicial district.

## STANDARD OF REVIEW

### A. Standards for Summary Judgment

A motion for summary judgment is appropriate under Fed. R. Civ. P. 56(c) where there is no "genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must make all reasonable inferences in favor of the non-moving party, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Applicable Standard of Review

Agency action may be set aside if the reviewing court finds that the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Ft. Mill Tel. Co. v. FCC*, 719 F.2d 89, 91 (4th Cir. 1983). The reviewing court must give deference to the agency's decision if supported by a rational basis in the record. *American Meat Inst. v. Dept. of Agriculture*, 646 F.2d 125, 127 (4th Cir. 1981). Likewise, the court must give deference to the agency's interpretation of its own statute and regulations. *Udall v. Tallman*, 380 U.S. 1, 16 (1965).

## STATUTORY BACKGROUND

The Immigration and Nationality Act includes among the classes of "excludable aliens" those aliens seeking entrance into the United States for the purpose of performing skilled or unskilled labor. *De Jesus Ramirez v. Reich*, 156 F.3d 1273, 1274-76 (D.C. Cir. 1998) (citing 8

U.S.C. § 1182(a)(5)(A)(i)(1994)). "An alien avoids this classification only if the Secretary of Labor determines and certifies to the Secretary of State and the Attorney General that 'there are not sufficient [American] workers who are able, willing, qualified, and available' and that 'the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.'" *De Jesus Ramirez*, 156 F.3d at 1275 (quoting 8 U.S.C. § 1182(a)(5)(A)(i)(I), (II)).  In addition, in order to avoid an alien's classification as an excludable alien, the alien's employer must comply with the Department of Labor's ("DOL") regulations and procedures governing the issuance of alien labor certifications promulgated at 20 C.F.R. § 656 *et seq*. (1998).[1]

To comply with the DOL's regulations and procedures, the employer seeking a labor certification must actively recruit domestic workers so that the labor market can be fairly tested.[2] If the recruitment efforts prove unsuccessful, certification for the alien is granted, provided that the applicant complies with the other procedures and regulations in Part 656.

The employer seeking certification must file an application with the local office of the state employment service.[3]  The regulations further require the employer to describe the alien's qualifications and provide a position description on the application.  Following the recruitment period specified in section 656.21(f), the Certifying Officer ("CO") for the United States Department of Labor ("DOL") reviews the case and decides either to grant the labor certification

---

[1]On March 28, 2005, new regulations governing alien labor certifications took effect. The regulations discussed in this opinion are those in effect prior to March 28, 2005, when Rankin filed its application.

[2]*See* 20 C.F.R. § 656.21(b) (1998).

[3]20 C.F.R. § 656.21(a) (1998).

or issue a Notice of Findings ("NOF").[4] If the CO's review suggests that the employer has not complied with the procedures set forth in the regulations, the CO issues a NOF, stating the specific bases upon which the certification is proposed to be denied, and may ask for additional information.[5] The NOF also notifies the employer that it has thirty-five (35) days within which to submit evidence or argument in rebuttal to the NOF.[6] Failure to submit timely rebuttal information results in the NOF being deemed final, constitutes a "failure to exhaust available administrative remedies, and precludes resort to the administrative-judicial review procedures provided by the regulations."[7]

If, after reviewing the rebuttal submission, the CO still proposes to deny the alien labor certification, the CO issues a Final Determination[8] setting forth the bases for the decision and notifying the employer of its right to seek review before the Board of Alien Labor Certification Appeals (the "Board").[9] Failure to submit a timely request for the Board's review results in the Final Determination being deemed final,[10] and constitutes a "failure to exhaust available administrative remedies."[11]

If the Board upholds the CO's decision denying the labor certification, the employer has a

---

[4] 20 C.F.R. § 656.24(b) (1998).

[5] 20 C.F.R. § 656.25(c)(2) 1998).

[6] 20 C.F.R. § 656.25(d) (1998).

[7] 20 C.F.R. § 656.25(c)(3) (1998).

[8] 20 C.F.R. § 656.25(f) (1998).

[9] 20 C.F.R. § 656.26(a) (1998).

[10] 20 C.F.R. § 656.25(g)(2)(iv) (1998).

[11] 20 C.F.R. § 656.26(b)(2) (1998).

right to petition for *en banc* review of the panel's decision to the full Board of Alien Labor Certification Appeals.

## FACT SUMMARY

On April 30, 2001, plaintiff Rankin filed an Application for Alien Employment Certification, Form ETA 750, with the local Virginia Employment Commission ("VEC") located in Richmond, Virginia, on behalf of plaintiff Gutierrez. (Pls.' Compl., ¶ 8.) In this application, Rankin sought to hire Mr. Gutierrez as a "Groundskeeper" with the following duties:

> [M]aintain grounds of industrial, commercial, or public property performing any combination of the following tasks: cut lawns . . . prunes schrubs [sic] . . . spray lawns . . . rakes and bags or burns leaves . . . cleans grounds and removes litter . . . spreads salt on public passageways to prevent ice build-up . . . plants grass . . . waters lawns repairs fences and gates . . . performs grounds maintenance duties using tractor equipped with attachments.

(DOL 147.) The application stated that the position required forty (40) hours of work per work week from 7:00 am to 4:00 pm daily, with overtime as needed. Rankin sought an employee who had at least three months of experience as a groundskeeper. (DOL 147.)

Mr. Gutierrez was listed as a citizen of Honduras who met the requirements of the position. (DOL 148.) The application was signed by Terrance L. Rankin, President of Rankin Landscaping, Inc. (DOL 150.), and Mr. Gutierrez. (DOL 152.) According to Rankin, both before and after offering the job opportunity to Mr. Gutierrez, Rankin had "unsuccessfully attempted to locate and employ a U.S. worker for the position, as evidenced by plaintiff Rankin's documented recruitment efforts." (Pls.' Compl., ¶ 9.)

On August 22, 2003, the VEC notified Rankin that its application was complete and it should start the thirty (30) day recruitment efforts previously referred to. (DOL 128.) The VEC allowed Rankin seventy-five (75) days to submit evidence of that recruitment effort to the VEC.

(DOL 128.) On October 31, 2003, Rankin timely submitted evidence of the recruiting effort to the VEC. (DOL 123.) On the same day, defendant notified Rankin that it has forwarded its labor certification to the Certification Office of the United States Department of Labor for processing. (Pls.' Compl., ¶ 11.)

On January 25, 2006, the CO issued a NOF to Rankin which communicated the DOL's intent to deny the application for an Alien Labor Certification. (DOL 100.) (Pls.' Compl., ¶ 14.) The intent to deny was based on the conclusion that Rankin failed to comply with the federal regulations governing the labor certification process for the permanent employment of aliens in the U.S. at 20 C.F.R. § 565, *et seq*. (DOL 100.) The NOF specified that Rankin had: (1) "failed to make the minimally acceptable effort" necessary to recruit U.S. workers; and, (2) failed to establish that the employment sought would be for a "permanent, full-time" worker as that phrase is defined by federal regulations. (DOL 102.) Specifically, the CO found that the employer failed to establish that the duties of the position of a Landscape Gardener[12] involved "full-time work for the entire year." (DOL 102.)

As a result of the NOF, Rankin was directed to submit "payroll records for the months of December through March for the past three years for all workers employed in this or similar positions. The weekly payroll records must show each employee by names, the number of hours worked, and gross wages." (DOL 102.) On February 28, 2006, Rankin submitted a rebuttal letter to the DOL's NOF and provided the requested payroll records and supporting documentation. (Pls.' Compl., ¶ 14.) (DOL 38-99.) In response to the first alleged deficiency,

---

[12]Plaintiffs contend that Gutierrez held the position of Groundskeeper. (Pls. Compl. ¶ 2.) The Department of Labor classified Gutierrez's position as that of Landscape Gardener. As seen in the discussion below, the Board's decision reviewed here was not based on Gutierrez's occupational title, but rather on his employment not being permanent and full-time.

Rankin submitted evidence to support its recruitment effort for U.S. workers. (DOL 38-42.) In response to the second alleged deficiency, Rankin submitted evidence which purported to establish that Gutierrez's position constituted "permanent, full-time" employment. (DOL 39.) This evidence consisted of payroll registers and quarterly VEC reports for parts of 2003 through 2005. (DOL 43-99.)

On July 27, 2006, the Certifying Officer issued a Final Determination in which she denied the Alien Labor Certification. (DOL 34-36.) (Pls.' Compl., ¶ 15.) In the Final Determination, the CO found that Rankin had successfully rebutted the first deficiency in the labor certification package relating to Rankin's good-faith efforts to recruit U.S. workers. (DOL 35.) The CO found, however, that Rankin had not successfully rebutted the second alleged deficiency because the CO found that the evidence that Rankin submitted did not establish that the job opportunity involved "full-time work for the entire year" as required by the regulations. (DOL 35-36.)

The CO noted that the payroll records that Rankin submitted "did not establish that this is a full-time position." (DOL 36.) For example, for the period beginning January 10, 2005 and ending January 23, 2005, the payroll records showed that Gutierrez worked less than thirty-one (31) hours for that two-week period. (DOL 59.) Similarly, for the period immediately thereafter, beginning January 24, 2005 and ending February 6, 2005, the payroll records showed that Gutierrez only worked thirty-six (36) hours for that two-week period. (DOL 60.) Thus, "the payroll records indicates [sic] that the period of employment is less than 12 month [sic] per year and that the work of Groundskeeper in your organization is only performed during certain seasons of the year." (DOL 36.)

Likewise, the CO found that the quarterly wage reports that Rankin submitted, on the whole, confirmed that the wages paid to the employees were significantly less during the winter

months. (DOL 32.) For example, the CO reviewed the entire spectrum of payroll records for the first quarter of 2003, January through March, and concluded that Gutierrez and other alien beneficiaries that Rankin sponsored individually worked approximately one hundred (100) hours during a three-month period. (DOL 36.) As a result, the CO concluded that Rankin did not establish that the work was full-time during the winter months and denied the application. (*Id.*)

On August 31, 2006, Rankin requested a review of the denial of the labor certification. (DOL 32.) In the request, Rankin asserted that it provided sufficient information "in the form of wage records and quarterly wage reports to determine that the aliens performed the duties of Groundskeeper on a year-round basis." (DOL 32.) In addition, Rankin disputed the CO's finding that the wages paid in the fourth quarter for the years 2001 through 2005 were significantly less that the third quarters of those years. (DOL 32.) The request for review of the CO's decision was submitted to the Board. (DOL 26.)

In the request for review submitted to the Board, Rankin reiterated its position that Gutierrez's position as Groundskeeper was "full-time, year-round" (DOL 22.) as required by 20 C.F.R. § 656.3 (subpart A). Rankin acknowledged that the Board had previously denied a labor certification for a Landscape Gardener because the employment was "considered seasonal and not full-time when the employees are not working during the winter months." (DOL 23, citing *Matter of Vito Volpe Landscaping*, 91-INA-300 (BALCA Sept. 29, 1994).) Rankin attempted, however, to distinguish itself from previous Board decisions by arguing that Gutierrez's position as Groundskeeper was permanent employment because he worked every month for the entire year. (DOL 23.)

Nevertheless, on January 16, 2008, the Board affirmed the CO's denial of the labor certification. (DOL 15-21.) In doing so, the Board noted that the "employer bears the burden of

proving that a position is permanent and full-time" and that a failure to carry that burden "warrants denial of labor certification." (DOL 18, citing *Bijan Azadi & Assoc.*, 1994-INA-382 (Oct. 4, 1995).) Furthermore, the Board noted that in *Matter of Vito Volpe Landscaping*, 1991-INA-300 (Sept. 19, 1993[13]) (*en banc*), the Board denied the alien labor certification application for a landscaping position where the job duties could only be performed ten months during the year, and found that the landscaping position fell into the definition of seasonal, rather than permanent, employment. (DOL 18.) The Board also noted that the issue was revisited later in *Crawford & Sons*, 2001-INA-121 (Jan. 9, 2004) with the same result.

      Turning to the facts presented by Rankin in its appeal, the Board scrutinized the payroll data and the quarterly wage reports that Rankin itself submitted. (DOL 18.) The Board found that the payroll records indicated that Gutierrez was paid significantly less during the first quarter, January through March, of 2003 than he was in the second quarter, April through June, of 2003. (*Id.*) Similarly, the Board found that in 2004 Gutierrez was paid significantly less during the quarters corresponding with the winter months, October through March, than he was during the two quarters corresponding with the summer months, April through September. (*Id.*) As a result, the Board concluded that Gutierrez had been working less than twelve (12) months of the year in a full-time capacity and denied the application. (*Id.*)

      Rankin timely filed a petition for *en banc* review of the Board's decision by the full Board of Alien Labor Certification Appeals. (DOL 11-13.) On February 21, 2008, the Board denied Rankin's request for *en banc* review of the panel decision and concluded that review "is not necessary either to secure or maintain uniformity of decisions or to resolve a question of exceptional importance." (DOL 9.)

---

[13]The correct year is 1994.

Plaintiffs then filed the instant action, seeking review of the Board's decision under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the court's federal question jurisdiction under to 28 U.S.C. § 1331.  (Pls.' Compl., ¶ 6.)

The parties agree that plaintiffs have properly exhausted all of their available administrative remedies and complied with all of the procedural requirements of 20 C.F.R. § 656 *et seq*.

## ANALYSIS

The applicable regulation defines employment as "permanent, full-time work by an employee for an employer other than oneself." 20 C.F.R. § 656.3.  Although it is clear that Gutierrez's position was permanent, that is, he performed job duties year round, it is undisputed that he did not work full-time during the winter months.  All of the Board's applicable precedent construe this regulation and other regulations consistently with the Board's outcome here.  *See Bijan Azadi & Assoc.*, 1994-INA-382 (denying an application for labor certification on the basis that the position was not permanent and full-time).  In order for a person to be "employed" for purposes of the Permanent Alien Labor Certification Program, the person must perform job duties on a full-time basis, that is, forty (40) hours per week, for each week of the entire year.  *See Town & Country Landscaping, Inc.*, 2008-INA-00073 (denying permanent labor certification for an employee who did not work full-time during the winter months).

Other Board decisions are not to the contrary.  For example, in *Matter of Vito Volpe Landscaping*, 91-INA-300 (BALCA Sept. 29, 1994), the Board held that a job that required the worker to perform his duties full-time for nine or ten months of the year and part-time for the other two or three months of the year is not permanent, full-time employment.  Indeed, a job that

is performed full-time for ten months of the year, cannot be covered by the permanent labor certification program for those ten months, and the temporary certification program for the other two months that the employee is not working or working part-time. Thus, the Board concluded that in order for a position to be covered by the Permanent Alien Labor Certification Program it must be both permanent and full-time. (*Id*.)

The Board later revisited this same issue in *Matter of Crawford & Sons*, 01-INA-121 (BALCA Jan. 9, 2004) and reached the same conclusion. In that case, the employer argued that because the work needed to be done every year, the position of Landscape Gardener was permanent, despite the fact that the workers only performed their duties full-time for ten months out of the year. Again, the Board rejected the employer's argument and concluded that a position that entailed only ten months of full-time work was covered by the temporary non-agricultural labor certification program. (*Id*.)

Likewise, in *Birch Hill Landscaping*, 1995-INA-129 (BALCA Jan. 2 1997), on which plaintiffs rely, the employer sought a permanent labor certification for an employee whose position entailed full-time work for only forty-two (42) weeks out of the year. Again, the Board concluded that the position was not covered by the Permanent Alien Labor Certification Program because the work was only performed full-time during certain seasons or periods of the year.

Plaintiffs argue that the Board's decision to deny the application was wrong for three reasons. First, plaintiffs argue that the Board failed to recognize that Gutierrez was employed each and every month of the year as a Groundskeeper and not employed for only ten months of the year as a Landscape Gardener like the workers in *Vito Volpe* and *Crawford & Son*. (Pls.' Motion for Summary Judgment, p. 8.) In support, plaintiff points to the DOL's own occupational definitions, which distinguish the occupation of Groundskeeper from that of Landscape Gardener.

(*Id*.) Specifically, plaintiff points out that many of the job duties of Groundskeeper includes work to be performed in the winter months. (*Id*.) Second, plaintiffs argue that the Board's conclusion that Gutierrez worked less in the winter months was incorrect. (*Id*. at 8-10.) Third, plaintiffs argue that public policy supports the DOL's granting of the application. Each argument is addressed in turn below. (*Id*. at 10.)

As noted above, although Gutierrez worked each and every month of the year, Gutierrez did not work full-time during the winter months. According to the Board's precedent, in order for a position to be covered by the permanent labor certification program, the duties of the position must be performed on a full-time basis for the entire year. *See Matter of Vito Volpe Landscaping*, 91-INA-300 (BALCA Sept. 29, 1994). The DOL's occupational description of Groundskeeper does include some job duties to be performed in the winter months. But the mere description that some job duties are to be performed in the winter months does not change the actual number of hours Gutierrez worked during the winter months. Indeed, simply changing the job title from Landscape Gardener to Groundskeeper does not change the character of the employment from part-time to full-time especially where, as here, it is clear that the employee only worked part-time during the winter months. As the payroll records clearly indicate, Gutierrez worked fewer than eighteen (18) hours during some weeks during the winter months. Moreover, for 2004, the Board found that Gutierrez worked sixty-four percent (64%) of his total hours during the summer months and the other thirty-six percent (36%) during the winter months. This percentage split indicates that, like the employees in *Vito Volpe* and *Crawford & Sons*, *supra,* Gutierrez did not work full-time, year round.

Because an employee must work full-time, year round to be covered by the Permanent Labor Certification Program, the Board decision to deny plaintiffs' application has a rational basis

in the record. *American Meat Inst. v. Dept. of Agriculture*, 646 F.2d 125, 127 (4th Cir. 1981). Accordingly, the Board's decision was not arbitrary or capricious.

Nor was it arbitrary or capricious for the Board to conclude that Gutierrez's work was part-time during the winter months based on the payroll data Rankin submitted. Plaintiffs argue that an employee's wages may vary from quarter to quarter in many professions, such as real estate agent or salesperson. Yet, the variation in wages does not mean that the salesperson or the real estate agent does not work full-time. Plaintiffs' argument is misplaced. Salespeople and real estate agents are compensated on a commissioned basis. Thus, the correlation between wages received and hours worked is not the same for commissioned workers as it is for an employee who is paid at an hourly rate.

Notwithstanding the correlation between wages paid and hours work, plaintiffs contend that Gutierrez worked 1690 total hours for 2004, which amounts to more than forty-two (42) weeks of full-time work using a forty (40) hour week as a benchmark. (Pls.' Motion for Summary Judgment, p. 10.) As noted above, however, sixty-four percent (64%) of the 1690 hours were worked during the summer months and thirty-six percent (36%) of the 1690 hours were worked during the winter months. Again, while Gutierrez worked full-time during the summer months it is clear that he worked less than full-time in the winter months. Moreover, the payroll data, which accounted for the number of hours each employee worked for each week, actually reflected that Gutierrez worked less than full-time during the winter months. Thus, the DOL's reasoning and methodology for concluding that Gutierrez was not covered by the Permanent Alien Labor Certification Program because he did not perform his job duties on a full-time basis for the entire year has a rational basis in the administrative record. *American Meat Inst. v. Dept. of Agriculture*,

646 F.2d 125, 127 (4th Cir. 1981).

Finally, plaintiffs argue that public policy supports the DOL's granting of the application. Plaintiffs' argument is not properly addressed to this court. This court's function is not to determine public policy, but rather to determine whether the Department of Labor acted arbitrarily or capriciously, whether is abused its discretion, and whether its decision is supported by a rational basis in the record   Here, using the deferential approach enunciated in *Udall v. Tillman, supra,* the court finds that the DOL did not act arbitrarily or capriciously, did not abuse its discretion, and its decision is supported by a rational basis in the record.   The Board examined the "relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation marks omitted).  Accordingly, there is no genuine issue of material fact to be decided and defendant is entitled to summary judgment

## CONCLUSION

For the foregoing reasons, the court finds that plaintiffs have presented no genuine issue of material fact to be decided, and defendant is entitled to summary judgment.  Accordingly, summary judgment is granted in favor of defendant, and an appropriate order will issue.

_____/s/_____<br>
Thomas Rawles Jones, Jr.<br>
United States Magistrate Judge

Alexandria, Virginia
February 3, 2009

14